UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES CHAPMAN,

        Plaintiff,

v.                        CASE No. 8:10-CV-2880-T-33TGW

MICHAEL ASTRUE,
Commissioner of Social Security,

        Defendant.

_____

## REPORT AND RECOMMENDATION

        The plaintiff in this case seeks judicial review of the denial of his claim for Social Security disability benefits.* Because the decision of the Commissioner of Social Security is supported by substantial evidence and contains no reversible error, I recommend that the decision be affirmed.

I.

        The plaintiff, who was fifty years old at the time of the most recent administrative hearing and who has a master's degree in general psychology, worked as a claims examiner, after serving fifteen years in the Navy (Tr. 51-53, 411). He filed a claim for Social Security disability

_____

     * This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998. See also Local Rule 6.01(c)(21).

benefits, alleging that he became disabled due to post-traumatic stress disorder ("PTSD") and depression (Tr. 100). The claim was denied initially and upon reconsideration.

Upon the plaintiff's request, a hearing was scheduled before an administrative law judge. At that time, the plaintiff appeared without representation. Because current medical records were missing, the hearing was truncated (Tr. 285-89). Nevertheless, the law judge subsequently rendered a decision, finding that the plaintiff did not have a severe impairment and thus was not disabled (Tr. 14, 22). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

The plaintiff appealed the decision to this court. Upon the Commissioner's own motion, the court remanded the case to the Commissioner pursuant to sentence four of 42 U.S.C. 405(g) (Tr. 344). The Appeals Council then vacated the final decision of the Commissioner and remanded the matter to the law judge for further proceedings consistent with this court's Order (Tr. 360-62).

Upon remand, the plaintiff, represented by counsel, received a de novo hearing before the same law judge. The law judge found that the plaintiff had severe impairments of PTSD, depressive disorder, and generalized anxiety disorder (Tr. 320). He concluded that, with these impairments, the plaintiff can perform a full range of work at all exertional levels with the following restrictions: "the claimant has an occasional limitation (1/3 of the day) for interaction with the general public and fellow workers; however, he has the capacity to perform fairly complex tasks with limited interaction with others in a low stress environment" (Tr. 321). The law judge decided that these limitations prevented the plaintiff from returning to his past relevant work (Tr. 327). However, based upon the testimony of a vocational expert, the law judge found that there are jobs that exist in significant numbers in the national economy that the plaintiff could perform, such as file clerk, hand packager, and warehouse worker (Tr. 328). The law judge therefore ruled that the plaintiff was not disabled (Tr. 329). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the

record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff attacks the law judge's decision on six grounds. Specifically, the plaintiff challenges the law judge's compliance with the Appeals Council's order, evaluation of the disability rating by the Department of Veterans Affairs ("VA"), use of Social Security standards, assignment of weight to the opinions of medical providers, hypothetical question to the vocational expert, and credibility determination. None of these contentions, which are loaded with rhetoric, warrants reversal, and some assertions are baseless.

A. The plaintiff first argues that the law judge failed to follow the Appeals Council's directive upon remand (Doc. 20, p. 2). This contention is meritless.

In the first place, the plaintiff has not cited any legal authority supporting the proposition that a failure to follow directions from the Appeals Council constitutes reversible error. The issue in this case is whether the plaintiff can demonstrate some violation of Social Security law, and not whether there is some intra-agency administrative deficiency. In other words, unless the plaintiff can establish that the Social Security Act, its

regulations, or cases interpreting those requirements, have been contravened, there is no justification for this court to remand the matter. Consequently, the plaintiff needed to make separate and distinct challenges to the law judge's decision, and not lump a number of rambling complaints under this heading (see Doc. 7, p. 2).

In any event, there was no violation of the Appeals Council's directive here. That is demonstrated by the fact that this argument was made to the Appeals Council (Tr. 296-99), and they did not accept it (see Tr. 291-92).

On this issue, it is appropriate to add that the plaintiff's first hearing, at which he was unrepresented, was abbreviated, whereas the subsequent hearing, at which he had counsel, was full and complete. Further, in his first decision the law judge found that the plaintiff's PTSD was not a severe impairment, but in the second decision the law judge found that the PTSD was a severe impairment. Moreover, the law judge thoroughly discussed, and evaluated, the medical evidence in the second decision. That discussion fairly and accurately reflected the medical evidence.

B. The plaintiff next contends that the law judge failed to address properly the disability rating by the VA, and that this determination was entitled to great weight (Doc. 20, p. 5). In 2004, the VA found that the plaintiff is disabled and unemployable due to service-connected disabilities (Tr. 390-92).

The disability decisions of the VA and other agencies are not binding on the law judge. 20 C.F.R. 404.1504. The court of appeals, however, has said that VA disability determinations must be given great weight. Rodriguez v. Schweiker, 640 F.2d 682, 686 (5th Cir. 1981). The Fifth Circuit explicated this principle in Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001):

> In Rodriguez and its progeny, we have sometimes referred to a VA disability determination as being entitled to "great weight." While this is true in most cases, the relative weight to be given this type of evidence will vary depending upon the factual circumstances of each case. Since the regulations for disability status differ between the SSA and the VA, ALJs need not give "great weight" to a VA disability determination if they adequately explain the valid reasons for not doing so.

Accordingly, in <u>Pearson</u> v. <u>Astrue</u>, 271 Fed. Appx. 979, 981 (11th Cir. 2008), the Eleventh Circuit stated that the law judge considered the VA rating of 100% disability "in his decision and correctly explained that a claimant had to satisfy a more stringent standard to be found disabled under the Social Security Act."

In this case, the law judge referred to, and considered, the VA rating in his decision (Tr. 320, 327). Thus, law judge stated (Tr. 327):

> I have considered the fact that the claimant was awarded a 100% disability rating from Veterans Affairs. However, that decision was based on VA rules and is not binding under social security law (20 CFR 404.1504). Other governmental agencies apply different rules and standards in determining disability and inability to work. Based on the evidence of record, it appears that the claimant was determined by the VA to have been unable to ... perform his duties as a claims examiner, not that he was unable to do any other work in the national economy.

In other words, the law judge not only recognized that the VA and the Social Security Act have different standards, but he construed the VA award to be based on the plaintiff's inability to return to past work and did not address the plaintiff's ability to perform other work in the national

economy. The plaintiff has not challenged this construction in his memorandum (see Doc. 20, pp. 5-6). Consequently, the law judge has adequately explained, and justified, his handling of the VA award.

It is appropriate to add that the plaintiff has indicated that his VA rating for PTSD was only 50%, not 100% (Tr. 392, 420). Also, the evidence before the law judge when he made his decision in June 2009 was substantially greater than the evidence before the VA when the plaintiff was given his award in December 2004. These circumstances provide further support for the law judge's treatment of the VA award.

C. For his third issue, the plaintiff asserts that this case involved "a complete lack of understanding on the part of the ALJ as to the proper standards he is supposed to use" (Doc. 20, p. 6). This argument, to the extent it even makes sense, is frivolous.

For example, the plaintiff asserts that "mental problems are not to be judged by objective evidence but are in fact non-exertional impairments" (id.). The plaintiff is plainly wrong in thinking that there are not objective findings of mental impairments, as the medical records in the case show (see, e.g., Tr. 234, following SOAP format for subjective,

- 10 -

objective, assessment and plan). Further, the category of objective (or subjective) evidence is of a completely different type than the category of non-exertional impairments.

Similarly, the plaintiff asserts that his inability to engage in substantial gainful activity on a sustained basis is supported by the fact that he has not done so since his onset date (Doc. 20, p. 7). This assertion is illogical. The regulations provide for a sequential analysis, and therefore a finding at step one that the plaintiff has not engaged in substantial gainful activity does not mean that the plaintiff cannot perform substantial gainful activity of any kind. See 20 C.F.R. 404.1520. In other words, just because a claimant does not work does not mean he cannot work. In this case, after finding that the plaintiff has not engaged in substantial gainful activity (Tr. 319), the law judge appropriately proceeded to the next steps in the sequential analysis and found at step five that there was work in the national economy that the plaintiff could perform.

D. The plaintiff also contends that the law judge failed to give proper weight to the opinions of the medical sources of record (Doc. 20, pp. 8-11). In support of this argument, the plaintiff points to the records and

findings of Dr. Gerald J. Hodan, Dr. Edith Dalton, Dr. Michael D. Eastridge, Dr. M. Barry Cannell, Ms. Sanfora L. Hale, and Mr. John J. Navarro (id.). This contention is baseless.

Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not giving them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or when the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In this case, none of the medical sources identified by the plaintiff are treating physicians. Nevertheless, the law judge considered these opinions at length, and he provided adequate justification for his evaluation of their opinions. He summarized his conclusion as follows (Tr. 326):

> None of these opinions is entitled to controlling weight or even significantly more weight than the others as nurse practitioners and licensed clinical social workers are not acceptable medical sources under the regulations; the remaining opinions were made by examining, not treating sources; and all of

the opinions appear to be based primarily on the claimant's subjective complaints, not objective medical findings. Nevertheless, none of these sources indicated that the claimant was totally unable to work and generally indicated that he was only moderately limited in the area of social functioning. The established residual functional capacity is not significantly inconsistent with these assessments.

The plaintiff seems to rely in particular upon the Global Assessment of Functioning ("GAF") rating of 50 given by Dr. Hodan, an examining psychologist. The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34. A rating of 41-50 reflects "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)" (id.). A rating of 51-60 reflects "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers") (id.). The Commissioner has declined to endorse the use of

GAF scores in disability determinations. Wind v. Barnhart, 133 Fed. Appx. 684, 692 n.5 (11th Cir. 2005). Moreover, a GAF score of 50 or less does not necessarily provide evidence of a disabling mental impairment. See DeBoard v. Commissioner of Social Security, 211 Fed. Appx. 411, 415 (6th Cir. 2006).

Accepting that the GAF scores have value, the plaintiff's scores were generally above 51 and thus in the moderate range. For example, most recently, Dr. Eastridge, a psychologist to whom plaintiff's counsel referred the plaintiff for an evaluation, assigned the plaintiff a GAF score of 55, which is in the middle of the moderate range (Tr. 403). Therefore, the GAF of 50 given by Dr. Hodan does not provide compelling evidence of a mental disability.

Furthermore, the mental functional limitations opined by Dr. Hodan are consistent in significant respects with the residual functional capacity found by the law judge, as the plaintiff acknowledges (Doc. 20, p. 10). Thus, Dr. Hodan concluded that the plaintiff was not limited in his ability to understand and carry out simple instructions and was only moderately limited in his ability to carry out complex instructions (Tr. 201).

Further, Dr. Hodan said that, "[i]f [the plaintiff] were employed, he would need a low stress work setting where he does not have to deal with the public on a regular basis or deal with a lot of coworkers and supervisors" (Tr. 199). Correspondingly, the law judge's determination of the plaintiff's residual functional capacity limited the plaintiff as follows (Tr. 321): "the claimant has an occasional limitation (1/3 of the day) for interaction with the general public and fellow workers; however, he has the capacity to perform fairly complex tasks with limited interaction with others in a low stress environment."

The law judge's residual functional capacity finding is thus the same as Dr. Hodan's assessment in significant areas. The law judge did not ignore Dr. Hodan's opinions, or even completely discount them, but rather, he went along with them to some degree. However, the law judge in his assigned role as fact-finder considered all of the evidence in the record and concluded that some of Dr. Hodan's opinions were not persuasive in light of the rest of the evidence. There is nothing in Dr. Hodan's reports, including the GAF rating of 50, that compels a finding that the plaintiff has greater functional limitations than those set out in the residual functional capacity.

See <u>Adefemi</u> v. <u>Ashcroft</u>, <u>supra</u>.

Importantly, the plaintiff, despite raising six issues, did not challenge the law judge's finding of the plaintiff's residual functional capacity. Any such challenge is waived in light of the requirements of the scheduling Order that the plaintiff "must identify with particularity the discrete grounds upon which the administrative decision is being challenged" and support the challenges by citations to the record of the pertinent facts and by citations of the governing legal standards (Doc. 7, p. 2).

Furthermore, even if a challenge to the residual functional capacity determination had not been waived, the evidence from the other doctors would not have compelled a different finding. Thus, Dr. Eastridge saw the plaintiff only once, and as a result of that examination, assigned the plaintiff a GAF of 55. Despite indicating that the plaintiff would not be as productive in an office setting as he had been at home (Tr. 129), Dr. Cannell did not "evaluate or treat the claimant" (Tr. 322).

While Dr. Dalton said that the plaintiff was "a walking time bomb" – after saying that he was functioning socially and occupationally,

she gave him a GAF of 53.  More significantly, her comment was made in January 2003, and the plaintiff's alleged disability onset date is June 28, 2004, the point at which he stopped working.

The plaintiff also argues that the opinions of nurse practitioner Hale and social worker Navarro are entitled to weight because "such opinions are acceptable when it comes to their effect upon the ability to work" (Doc. 20, p. 10).  However, the law judge specifically considered the information that they had reported.  As the law judge noted (Tr. 326), and the plaintiff acknowledged (Doc. 20, p. 10), they are not acceptable sources under the regulations.  20 C.F.R. 404.1513(d).  In all events, the law judge correctly stated that nurse practitioner Hale "did not offer an opinion regarding the claimant's level of function, other than to assess GAF scores," which were typically in the 50's, and "social worker Navarro opined in October 2006 only that a return to claimant's pre-retirement duties was not recommended" (Tr. 326).  Thus, neither of these sources set forth any limitations on the plaintiff's ability to perform substantial gainful activity.

The plaintiff asserts that the law judge improperly relied upon the opinions of the State agency psychologists (Doc. 20, p. 8).  In this case,

the law judge explained that "[s]ignificant weight is accorded the state agency opinions, as they were made by experts in the field of disability determination; they are backed by well-reasoned argument; and they are well supported by the medical evidence, including the substantial medical evidence submitted subsequent to the assessments" (Tr. 327).

In this case, there were two nonexamining reviewing psychologists: Dr. Martha Putney and Dr. Carol Deatrick. The opinions of the two were not exactly the same, with Dr. Putney opining slightly less restrictions than Dr. Deatrick. They were in agreement that the plaintiff had moderate limitations in social functioning and in concentration, persistence, or pace, while Dr. Putney concluded that the plaintiff's limitation in activities of daily living was mild and Dr. Deatrick thought that he had moderate limitations in that area (see Tr. 130, 188).

The law judge specifically referred to Dr. Putney's assessment (Tr. 327). He found persuasive Dr. Putney's reasoning with respect to limitations from PTSD that, subsequent to the plaintiff's experience in the Navy from 1980-1995, the plaintiff "was able to obtain a Masters Degree in

psychology and to maintain employment as a claims examiner for the VA from 1998 to 2004" (id.; see Tr. 132).

In all events, the law judge did not base his decision solely upon the opinions of the reviewing psychologists, as the plaintiff asserts. Thus, the law judge considered and discussed, at length, all of the medical evidence of record, including the reports of Hale, Navarro, Dr. Dalton, Dr. Cannell, Dr. Hodan, and Dr. Eastridge (Tr. 321-27). It was a case in which the law judge had reports from a number of mental health providers, but none from treating psychiatrists or psychologists. The law judge, as a fact-finder, was assigned the responsibility of evaluating all the evidence before him and determining the plaintiff's residual functional capacity. Under these circumstances, there is no merit to a contention that the law judge should have given more, or less, weight to the viewpoint of a particular provider. Similarly, it is baseless to assert that the law judge was improperly substituting his opinion for that of a mental health provider; he was simply carrying out his duty to weigh the evidence.

E. The plaintiff argues that the law judge erred by failing to pose a complete hypothetical question to the vocational expert. In this

regard, he maintains that hypothetical did not include the limitations found by Dr. Hodan and Dr. Eastridge (Doc. 20, p. 11).

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). However, the administrative law judge is not required to include restrictions in the hypothetical question that he properly finds are unsupported. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004).

The plaintiff argues that "it becomes obvious when looking at the RFC that the ALJ ... gave some weight to the opinions of Dr. Hodan and Dr. Eastridge. However, he did not use their limitations in the hypothet [sic] to the VE" (Doc. 20, p. 11). That assertion is not entirely accurate. As indicated, the law judge included some of Dr. Hodan's functional limitations in his residual functional capacity determination and in his hypothetical question. The law judge, however, discounted some of Dr. Hodan's functional limitations, as well as Dr. Eastridge's (assuming he even opined any). To the extent the law judge discounted functional limitations

in the opinions of those two psychologists, those limitations did not need to be included in the hypothetical question.

Moreover, this contention misfires due to the plaintiff's failure to challenge the law judge's finding of the plaintiff's residual functional capacity. The hypothetical question is not deficient as long as it corresponds to the residual functional capacity. Here, the residual functional capacity clearly matches the pertinent hypothetical question posed to the vocational expert (Tr. 321, 425-26). Consequently, the hypothetical question is not flawed.

F. Finally, the plaintiff attacks the law judge's credibility determination. This contention also lacks merit.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical

condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The plaintiff frivolously asserts that "[t]he ALJ in this case does not mention the 11th Circuit pain standard by name" (Doc. 20, p. 12). No, but he cites the leading case of Landry v. Heckler, as well as the governing regulation and Social Security Rulings (Tr. 321). This demonstrates that the law judge applied the proper standards. See Wilson v. Barnhart, supra, 284 F.3d at 1225-26. Moreover, he explained his application of those standards (Tr. 321).

Significantly, the law judge did not wholly discount the plaintiff's subjective complaints. The law judge discussed the plaintiff's testimony in his decision, including the plaintiff's allegations of depression, PTSD, social isolation, and impaired concentration (id.). After considering

the plaintiff's testimony, along with the objective medical evidence, the law judge found that the plaintiff's PTSD, depression, and anxiety constituted severe impairments (Tr. 320). Also, the law judge limited the plaintiff to occasional interaction with the public and co-workers in a low stress environment (Tr. 321).

In his credibility determination, the law judge gave a cogent explanation for declining to credit fully the plaintiff's complaints of total disability. Specifically, the law judge stated (Tr. 325-26) (emphasis in original):

> Multiple factors weigh against the claimant's credibility in this case. The claimant was followed for mental health treatment beginning 2001 and for 2 years he did not mention trauma that he had suffered. None of the VA mental health personnel appear to have explored the claimant's history of trauma, simply accepting the claimant's assertions that he had post traumatic stress. There were no abnormalities of speech or thought noted on examination. The claimant asserted to Dr. Hodan that he was "part of an extraction team and would thus often have to get <u>bodies or parts of bodies.</u> He himself was never in combat although he was in situations where there was a lot of <u>bombing and shooting going on around</u> him." (Emphasis added.) This assertion was never made earlier to any VA representative. I note that personality testing was considered only marginally valid for clinical

interpretation. In effect, the conclusion of Dr. Hodan is completely premised on the alleged trauma the claimant suffered while on active duty. However, there is no evidence that the claimant was in the vicinity of actual bombing or shooting. Military records confirm that the claimant took part in the rescue of sailors from a submarine after they abandoned ship following a fire. There was no reference to bombing and shooting and no reference to service in a combat environment. The records show that the claimant has awards provided to those who serve honorably in the service, but they do not support his assertion of exposure to bombing and shooting. Had the claimant served at any time in a combat environment, his DD-214 would have reflected that fact. The claimant later admitted that the bombing and shooting only occurred during training and he would not have been extracting bodies during a training exercise. I conclude that the claimant's assertions of trauma are highly suspect and a disservice to those service members who did experience severe trauma while on active duty. Further, the claimant's diagnosis of PTSD is based upon a very tenuous premise. The record contains multiple, inconsistent accounts of the claimant's alleged experiences (see Exhibit 16E, 12F, p. 1; Exhibit 11F, p. 1, 2; Exhibit 9F, p. 15, 16, 17, 38, 53).

Also of import, the claimant's assertion of additional traumas after service in the Navy, recently outlined to Dr. Eastridge at Exhibit 12F, are also suspect because never mentioned before. While in graduate school, after his naval service he allegedly took no action while a woman was being raped and killed and has guilt feelings. Also a year

- 24 -

ago his daughter was "impaled on a sippy cup" and injured herself. However, you see no reference to these events in his VA medical records and actually no treatment since the latter part of 2007. If he suffered this additional "trauma" one can assume he would have sought treatment in the last two years.

I also note that Dr. Eastridge reported administering the Personality Assessment Inventory (PAI) test rather than the MMPI2 because the claimant was too familiar with the MMPI2. Dr. Hodan pointed out that the MMPI2 test results were marginally valid for clinical interpretation because the claimant produced such an elevated profile. The claimant has a degree in psychology and, as a result, Dr. Eastridge presumed he was acquainted with the test, yet he produced questionable results in August 2007 which affects his credibility. The claimant asserted that he had serious difficulty interacting with others and was known to follow someone through traffic because of road rage. Yet, the file references no arrests, police record, or emergency room visits. He also has not sought treatment for the last 1-1/2 years. Even crediting the diagnosis of PTSD and depression, the records do not support disability to the level alleged by the claimant given the conflicts in the evidence and lack of recent treatment.

This explanation is sufficient to discount the plaintiff's subjective complaints. See Heppell-Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 699 (11th Cir. 2006).

The plaintiff asserts that his ability to engage in activities of daily living does not undermine his credibility (Doc. 20, p. 12). However, when viewed with the record as a whole, this evidence clearly supports the law judge's credibility determination. The plaintiff alleges total disability from his impairments, yet, as the law judge noted, the record indicates that the plaintiff could "prepare meals, do household repairs, do some cleaning, drive, manage money, [and] go fishing 1-2 times per month with a friend" (Tr. 325). The plaintiff also acted as the primary caregiver for his one-year old daughter while his wife was at work (Tr. 228, 323). Thus, although not dispositive, the plaintiff's activities tend to show that the plaintiff's impairments are not as severe as alleged. See 20 C.F.R. 404.1529(c)(3).

The plaintiff also asserts that, as a result of the law judge's bias, he was "denied a fair hearing under notions of equal protection and due process" (Doc. 20, p. 13). The law judge, of course, is not required to believe every allegation of disability, and a claim of bias cannot be predicated simply upon an adverse credibility determination. The plaintiff, furthermore, does not provide any citations to the record in support of this assertion. Thus, in light of the scheduling Order in this case (Doc. 7, p. 2),

the plaintiff has waived any such contention. In all events, the law judge's decision is supported by substantial evidence in the record, and does not appear to be the product of bias.

IV.

For these reasons, the decision of the Commissioner is supported by substantial evidence and does not contain reversible error. I, therefore, recommend that the decision be affirmed.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: FEBRUARY / 7, 2012

NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).